NOT FOR PUBLICATION                                                                                    CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
KENNETH ALLEBACH, JR.,                      :
                                            :     Civil Docket No. 04-287
            Plaintiff,                      :     Hon. Faith S. Hochberg, U.S.D.J.
                                            :
        v.                                  :
                                            :     **OPINION**
LYDELL SHERRER, ET AL.,                     :
                                            :     Dated: July 27, 2005
                                            :
            Defendants                      :
                                            :
_____:

**HOCHBERG, District Judge:**

      This Motion comes before the Court upon Defendants' motion for summary judgment. Pursuant to 42 U.S.C. § 1983, Plaintiff *pro se*'s Complaint alleges Eighth Amendment violations by corrections officers and prison doctors. This Court has considered the submissions of the parties pursuant to Fed. R. Civ. P. 78, and for the reasons set forth below this motion is unopposed.

**I.      Facts**

      Mr. Allebach has been a prisoner at Northern State Prison since July 18, 2003. On January 23, 2004, Mr. Allebach filed a claim pursuant to 42 U.S.C. § 1983 alleging that he was subjected to unconstitutional conditions of confinement while serving time at New Jersey State Prison. Specifically, Mr. Allebach alleges that between June 12, 2003 and July 18, 2003, he was

1

denied clothing, a mattress, running water, religious items, visitation, recreation, telephone privileges, attorney visits or other communication, Ritalin needed to treat his alleged attention deficit disorder, was maliciously fed a diet of baloney and cheese sandwiches and was denied the ability to file grievances regarding his situation.  Mr. Allebach also alleges that he was denied access to the courts while serving time at New Jersey State Prison.  He further alleges that upon his July 18, 2003 transfer to the Administrative Close Segregation Unit at Northern State Prison, Defendants continued to deny him access to the law library, his legal materials (including a word processor, legal files, law books and diskettes) and withheld his incoming correspondence, causing him to "miss court-ordered deadlines and adversary pleadings."  Defendants filed the instant motion for summary judgment on December 3, 2004 contending there is no issue of material fact that would entitle Plaintiff to relief and that Defendants are entitled to qualified immunity.

**II.    Standard**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In other words, that "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Indiana Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

All facts and inferences must be construed in the light most favorable to the non-moving

party. Peters v. Delaware River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). The party seeking summary judgment always bears the initial burden of production. Celotex Corp., 477 U.S. at 323. This requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue for which it bears the burden. See id. at 322–23.

Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party. To avoid summary judgment, the non-moving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. Miller, 843 F.2d at 143; see also Celotex Corp., 477 U.S. at 324.

Rule 56(e) of the Federal Rules of Civil Procedure provides that "if the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party." It is well settled that "this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond." Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). The Court must "first determine whether summary judgment is appropriate--that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." Id.

In considering an unopposed summary judgment motion, it is entirely appropriate for this Court to treat all of the facts properly supported by the movant to be uncontroverted. See id. at 176; Longoria v. New Jersey, 168 F. Supp. 2d 308, 312, n.1 (D.N.J. 2001) (holding that where plaintiff had not submitted a Rule 56.1 statement, the court would treat the facts in the

defendant's Rule 56.1 statement as admitted unless controverted in the plaintiff's briefs or contradicted by the evidence); Maertin v. Armstrong World Indus., 2000 U.S. Dist. LEXIS 5857 n.1 (D.N.J. May 3, 2000) (where defendant submitted a Rule 56.1 statement and the plaintiff did not, the facts in the defendant's statement were deemed admitted when supported by the evidence); see also, Custer v. Pan American Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993); Wienco, Inc. v. Katahn Assoc., Inc., 965 F.2d 565, 568 (7th Cir. 1992).

### III.  Discussion

#### A.  This motion is unopposed

Mr. Allebach did not file any opposition to Defendants' motion, despite having been granted multiple extensions by this Court. Defendants' motion for summary judgment was filed on December 3, 2004. In response to Plaintiff's request for an extension, this Court adjourned the returnable date to January 10, 2005. Plaintiff failed to submit an opposition by the deadline he requested and therefore the Court ordered him to show cause in writing no later than March 9, 2005 why Defendants' motion should not be deemed unopposed.

In a letter submitted March 8, 2005, Plaintiff stated that he was unable to submit his opposition due to Defendants' confiscation of his legal materials. In response to Plaintiff's letter, Defendants submitted a detailed narrative by the Associate Administrator of New Jersey State Prison, identifying Mr. Allebach's pattern of disruptive, aggressive and high risk behavior as the cause for him to be placed in a segregated unit and denied access to his possessions. According to the narrative, in January 2005, Mr. Allebach repeatedly swallowed foreign objects (razor blades, a metal chain, and a needle) warranting special medical attention, and on April 5, 2005, he broke free of his handcuffs and swallowed part of a chain.

On May 6, 2005, Magistrate Judge Shwartz held a video-conference with the parties to address Plaintiff's ability to submit an opposition. Judge Shwartz ordered that, subject to Plaintiff's compliance with the rules and regulations of the prison, he was to be given access to his legal materials at least one hour per day, five days per week. It was further ordered that this access could be increased at the discretion of the prison "if Plaintiff comport[ed] himself in a fashion that modifie[d] his custodial status." To accommodate Plaintiff, the Court granted him until July 13, 2005 to submit any opposition.

Despite these warnings, Mr. Allebach continued to violate the rules and regulations of New Jersey State Prison. According to the June 10, 2005 letter from Defendants, Allebach resumed his disruptive behavior on June 8, 2005. Specifically, he ingested metal objects, attempted to cut himself, tampered with the lock on his cell door and placed razor blades in his rectum. In order to protect Mr. Allebach, the other inmates and prison staff, Mr. Allebach was placed in a secure cell and his access to his legal materials per the Court's May 6, 2005 order was discontinued. During this time, Mr. Allebach retained access to the inmate paralegals upon his request.

As of the date of this Opinion, Mr. Allebach has not filed an opposition to Defendants' motion. Because the Court and the prison have gone to extraordinary lengths to provide Mr. Allebach the opportunity to oppose the instant motion and he has failed to file an opposition, the Court deems Defendants' motion unopposed. Saunders v. Horn, 959 F.Supp. 689 (3d Cir. 1996) (deeming defendants' motion to dismiss unopposed when a pro se prisoner-plaintiff's second time extension for response had passed).

5

### B.   Conditions of Confinement

Defendants have put forth sufficient uncontroverted evidence to show that Mr. Allebach's claims regarding the conditions of his confinement at New Jersey State Prison do not rise to the level of a Constitutional deprivation of "basic human needs." See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (holding that the human needs protected by the Eighth Amendment include inhabitable shelter, medical care, adequate food, sanitation, personal safety and exercise); Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000) (holding that prison conditions amount to cruel and unusual punishment if they cause "unquestioned" and "serious" deprivations of basic human needs that deprive inmates of the minimal civilized measure of life's necessities);  Liles v. Camden Co. Dept. of Corrections, 225 F. Supp. 2d 450, 458 (D.N.J 2002) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (holding that the Constitution "does not mandate comfortable prisons").

Mr. Allebach alleges that between June 12, 2003 and July 18, 2003, he was exposed to improper conditions of confinement: he was denied (1) running water, (2) religious items, (3) visitation, (4) recreation, (5) use of the telephone, (6) a mattress and (6) clothing.  He further states that during this same time period, he was "maliciously" fed a diet of baloney sandwiches three times each day with no opportunity to grieve this mistreatment.

To demonstrate a deprivation of his basic human needs in violation of the cruel and unusual punishments clause of the Eighth Amendment, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently culpable state of mind, that is, deliberate indifference.  Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).  A prisoner who has been convicted and sentenced cannot claim right to be free from punishment; he may only claim right to be free from "excessive

punishment so totally without penological justification that it results in gratuitous infliction of suffering." Gibson v. Lynch, 652 F.2d 348 (3d Cir. 1981) (holding that an inmate's complaints about his food, physical conditions of his cell, lack of clothing and laundry service and limitations on recreation and shower time did not constitute cruel and unusual punishment because his nutritional needs were met, he was afforded living and hygienic conditions which were not injurious to him).

Defendants have put forth sufficient evidence that between June 12, 2003 and July 18, 2003 Mr. Allebach's nutritional needs were met, that he was afforded living and hygienic conditions which were not injurious to him. Specifically, Defendants submitted a New Jersey State Prison "Special Report" dated June 26, 2003 that detailed a disciplinary incident involving Mr. Allebach. According to the report, Mr. Allebach broke the light cover in his cell with his hand, then spread the blood from the resultant hand injury onto his face, and claimed he was beaten. Following this incident, a nurse ordered that his mattress and other items be removed from the cell to prevent Mr. Allebach from injuring himself. The report further indicates that Mr. Allebach was offered a gown, but refused. As with the prisoner in Gibson, Mr. Allebach was otherwise in reasonably good physical and mental health such that the alleged deprivations did not rise to the level of cruel and unusual punishment. Id. at 352.

Moreover, Mr. Allebach failed to evidence bodily harm related to any of these alleged conditions. Liles v. Camden Co. Dept. of Corrections, 225 F. Supp. 2d 450, 458-460 (D.N.J. 2002) (holding that prisoners failed to demonstrate a sufficiently serious constitutional deprivation of life's necessities because they were unable to establish a causal connection between the alleged condition of their mattresses and the bodily harm they claimed). In Wilson v. Seiter, the Supreme Court noted that "nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists...." 501 U.S. 294 (1991). Because Defendants have shown that Mr. Allebach has not

suffered a single deprivation of human needs, his allegations, in combination, do not raise an Eighth Amendment violation.

Defendants also submitted sufficient evidence showing that Defendants were not deliberately indifferent to Mr. Allebach's medical needs. Mr. Allebach's claim that Dr. Curra refused to prescribe him Ritalin for his "attention deficit disorder" does not rise to the level cruel and unusual punishment and deliberate indifference to his medical needs in violation of the Eighth Amendment. While convicted prisoners are entitled to psychological or psychiatric care for serious mental or emotional illness, there must be deliberate indifference on the part of prison officials and the prisoner's medical needs must be serious. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979) (holding that there is no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart) (citing Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977).

Even if, as Mr. Allebach alleges, he had been taking Ritalin for three years prior to the time Dr. Curra refused to prescribe it, "prison authorities have a legitimate security concern in limiting exposure of inmates to drugs, even those administered on a controlled basis, to as short a period of time as is medically reasonable." Id. at 761. The Third Circuit requires considerable latitude be given to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Id. at 762. Because Defendants show that Mr. Allebach was treated by a prison doctor who medically determined that Mr. Allebach did not need Ritalin, prison officials were not deliberately indifferent to his medical needs.

C. **Access to Legal Materials**

Defendants submitted sufficient evidence showing that Mr. Allebach did not suffer any actual deprivation of court access as a result of Defendants' alleged confiscation of his legal materials and legal correspondence. Lewis v. Casey, 518 U.S. 343 (1996) (defining actual injury

in context of access to courts as the loss or rejection of a nonfrivolous legal claim regarding sentencing or the conditions of confinement); Robinson v. Ridge, 996 F. Supp. 447, 449 (E.D. Pa. 1997), aff'd, 175 F.3d 1011 (3d Cir. 1999) (holding that in order to state a cognizable claim for violation of the right to access to the courts, a prisoner must allege and offer proof that he suffered an actual injury as a result of the denial). In Roman v. Jeffes, the Third Circuit deemed actual injury sufficient to sustain a cause of action for denial of access to the courts to be present where an inmate deprived of legal materials was unable to meet court imposed deadlines as a result of the deprivation. 904 F.2d 192, 198 (3d. Cir. 1990); Gordon v. Morton, 131 Fed. Appx. 797 (3d Cir. 2005) (holding that inmate's claim against corrections officers for alleged deprivation of access to the courts failed where he did not demonstrate actual injury).

The only injury alleged by Mr. Allebach was the dismissal of a civil litigation matter brought in United States District Court for the District of New Jersey, entitled Allebach v. Robert Wood Johnson, et al., Civ. Action No.: 01-4485. However, Defendants' evidence shows that the dismissal of the Robert Wood Johnson case was due to Mr. Allebach's "failure to comply with court order(s)..." Order, Civ. Action No.: 01-4485. In addition to submitting a copy of the dismissal Order, Defendants submitted Judge Martini's Letter Opinion setting forth Mr. Allebach's objections to the dismissal. Notably, Mr. Allebach had claimed to Judge Martini that it was his "inability to freely communicate confidences with his attorney..." that made it impossible for him to address the court's orders in a timely fashion. Letter Opinion, Civ. Action No.: 01-4485. Judge Martini found no support for this objection given that Mr. Allebach was a pro se plaintiff in the matter. Mr. Allebach's argument that he could not proceed absent access to evidence in the files of his attorney was deemed likewise unavailing as he had no attorney representation. Id.

Mr. Allebach now alleges that the confiscation of his legal materials, writing materials, and the denial of direct access to the law library led to the dismissal of the Robert Wood Johnson case.  This allegation is wholly inconsistent with Mr. Allebach's representations to Judge Martini.  Defendants have put forth sufficient evidence to show that Mr. Allebach was a continuous and active participant in his litigation before Judge Martini as evidenced by (1) Mr. Allebach's communications with Judge Martini that did not indicate an inability to communicate or denial of correspondence and (2) deductions from Mr. Allebach's Inmate Trust Account revealing that he had purchased stamps on numerous occasions during the pendency of his litigation, including July 30, 2003, August 4, 2003, September 23, 2003, September 29, 2003, October 2, 2003 and October 8, 2003.  Defendants' evidence further proves that Mr. Allebach's materials were returned to him on September 5, 2003, giving him nearly four months to communicate with the Court before the Robert Wood Johnson case was dismissed on January 22, 2004.  Thus, even if Mr. Allebach had been deprived core material, Defendants have put forth evidence to show that Mr. Allebach was not actually injured by this alleged deprivation.[1]

Notably, Mr. Allebach does not allege any deprivation of access to prison paralegal services or a paging system by which to obtain legal materials.  The Third Circuit does not require that Mr. Allebach have access to legal materials or a law library himself, but that he have

---

[1] The Third Circuit held that denying a prisoner access to core legal materials is not a frivolous claim with respect to his rights to access the courts.  See Roman, 904 F.2d at 194 (citing Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3d Cir. 1988)) (defining core materials as legal research notes, copies of orders issued in cases in which a prisoner is involved and pleadings filed by opposing parties).  The only core legal materials alleged by Mr. Allebach to have been confiscated were legal correspondence from the court relating to the Robert Wood Johnson matter.  Roman, 904 F.2d at 198 (holding that denial of access to pens and paper does not rise to the level of a constitutional deprivation).

access to a prison paralegal or paging system by which to obtain legal materials. Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3d Cir. 1993) (holding that segregated prisoners who do not have access to an institution's main law library must have some means by which documents and materials can be identified by and furnished to them in a timely fashion). Mr. Allebach's complaint does not allege that he was deprived access to these resources.

Finally, Defendants submitted evidence that their actions in restricting Plaintiff's access to his "legal materials" was related to a legitimate penological goal, namely a concern for Plaintiff's own safety and/or the safety of others at the institution. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). While Mr. Allebach has a fundamental right of access to the Courts even when housed in a segregated unit, prisoners do not have "abstract, freestanding rights to a law library or legal assistance." Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343 (1996). The Supreme Court has given deference to prison authorities on "difficult and sensitive matters of institutional administration." O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987).

Defendants submitted evidence to show that the prison was acting to protect the safety of Mr. Allebach, other inmates and prison staff by segregating Mr. Allebach. The long list of Mr. Allebach's misbehaviors includes a June 13, 2003 incident where he yelled and banged on his cell door, disrupting the orderly running of the prison, a June 17, 2003 incident where he spit blood on his restraints, and a June 19, 2003 incident where he was found in possession of two pieces of sharp metal approximately one-quarter inch long each. The record reveals that his legal materials were returned every time Mr. Allebach was taken off administrative segregation or close segregation.

### IV.   Conclusion

Defendants have shown, without opposition, that there are no genuine issues of material fact from which a reasonable jury could conclude that Defendants violated Plaintiff's

constitutional rights.² Accordingly, Defendants' Motion for Summary Judgment is granted. An appropriate Order shall issue.

                                                     /s/ Faith S. Hochberg  
                                                UNITED STATES DISTRICT JUDGE

---

²Although qualified immunity was raised as a defense in this case, the Court need not analyze the issue. Saucier v. Katz requires that courts resolve the substantive constitutional issue before addressing qualified immunity. 533 U.S. 194, 199-201 (2001). The Court has done so and has found for Defendants on the merits, making Defendants' qualified immunity defense irrelevant.